**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| THE EQUAL RIGHTS CENTER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-05-2626 |
| | * | |
| AVALONBAY COMMUNITIES, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

**************************************************************************

<u>**MEMORANDUM OPINION**</u>

Plaintiff the Equal Rights Center ("ERC") brought this action against Defendant AvalonBay Communities, Inc. ("AvalonBay") seeking damages and injunctive relief for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, and Fair Housing Act, Title VIII of the Civil Rights Act of 1968 ("FHA") as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619. Currently pending before the Court is AvalonBay's Motion to Dismiss or, in the alternative, for Summary Judgment. The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motion. The issues have been fully briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will deny AvalonBay's Motion to Dismiss or, in the alternative, for Summary Judgment.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the ERC's complaint and are viewed in the light most favorable to Plaintiff.

1

The ERC is a non-profit corporation organized in, and with its principal place of business in, Washington, D.C.  One of the ERC's missions is to promote "the equal availability of housing to all persons without regard to any protected category."  (Compl. ¶ 45.)  The ERC "seeks to advance its mission through education, counseling, advocacy, enforcement, and referral services to aid protected individuals by knowing and preserving their civil rights."  (Compl. ¶ 7.)

AvalonBay is a Maryland corporation with its principal place of business in Alexandria, Virginia.  AvalonBay owns, controls, operates, manages, or supervises at least 100 multifamily housing complexes located throughout the United States.

Prior to filing this action, the ERC became aware that a large number of multifamily housing complexes being built in the Maryland and greater Washington, D.C. area did not comply with the FHA and ADA.  (Compl. ¶ 13.)  Thus, the ERC visited a number of AvalonBay's properties in the Maryland and Washington, D.C. area.  At each location, the ERC discovered some FHA and ADA violations in the design and construction of the properties.  (Compl. ¶ 14.)  It appears that the ERC then visited additional AvalonBay locations throughout the United States.  In total, the ERC visited and tested 33 AvalonBay properties (the "tested properties") in 2005.  These properties were located in Maryland, California, Massachusetts, New Jersey, Virginia, Washington, and the District of Columbia.  (Compl. ¶ 16.)  The ERC discovered at least one FHA or ADA violation at each tested property.  (Compl. ¶ 19.)  After completing this testing, the ERC reviewed floor plans for the additional 67 AvalonBay properties (the "untested properties") at issue in this case.  (Compl. ¶ 39.) According to the ERC, the floor plans for both the tested and untested properties show common elements of design, and thus the ERC believes that the untested properties have similar FHA and ADA violations.  (Compl. ¶ 39.)

Following its investigation into AvalonBay's properties, the ERC filed suit in this Court on September 22, 2005.[1]  The ERC alleges that:

> AvalonBay has engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of both the FHA and the ADA by designing, constructing, managing, owning and/or operating covered multifamily dwellings, and the common use and public use areas associated with those covered dwellings in such a manner as to deny persons with disabilities access to, and the use of, these facilities as required under these federal civil rights laws.

(Compl. ¶ 6.)  The ERC further alleges that, because of Defendant's wrongful conduct, the ERC "has been damaged by the frustration of its mission, and by having to divert significant resources that the ERC would have used to provide counseling, education and referral services."  (Compl. ¶ 8.) "Instead, the ERC has devoted substantial resources to identifying, investigating and counteracting AvalonBay's discriminatory policies and practices."  (Compl. ¶ 8.)

On November 11, 2005, AvalonBay filed the pending Motion to Dismiss or, in the alternative, for Summary Judgment.  Shortly after the motion became ripe in the spring of 2006, the parties jointly requested that the Court defer ruling upon the motion pending settlement discussions. On July 26, 2006, at the joint request of the parties, the Court stayed the case to allow further settlement discussions.  Those settlement discussions ultimately were unsuccessful, and on April 25, 2008, the Court reopened the case and ordered supplemental briefing to update issues related to the pending motion.  In addition, the United States was granted leave to file an Amicus Brief.  The last relevant brief was filed on July 14, 2008.

---

[1] In filing this action, the ERC seeks several remedies, including: (1) a declaration that AvalonBay's conduct violates the ADA and FHA; (2) injunctive relief; (3) compensatory damages; (4) punitive damages; (5) attorneys' fees and costs; and (6) other appropriate relief.

## II.      STANDARD OF REVIEW

### A.      Dismissal under Rule 12(b)(1)

There are two ways to present a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  First, a party may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based."  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  In this situation, the Court reviews the motion under the same standard as a Rule 12(b)(6) motion.  *Id.*  Second, a party may contend that the jurisdictional allegations in the complaint are not true.  *Id.*  In the latter situation, the Court may conduct an evidentiary hearing and consider matters beyond the allegations in the complaint.  *Id.*

### B.      Dismissal under Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007).  That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776,

4

783 (4th Cir. 1999).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1965 (internal citations omitted).

Where a motion for dismissal pursuant to Rule 12(b)(6) relies on matters outside the pleadings, the Court treats it as a motion for summary judgment.  Fed. R. Civ. P. 12(d).

C.   Summary Judgment

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.*, 152

5

F.3d 326, 330-31 (4th Cir. 1998).  Additionally, hearsay statements or conclusory statements with

no evidentiary basis cannot support or defeat a motion for summary judgment.  *See Greensboro*

*Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III.    ANALYSIS

In seeking dismissal, AvalonBay asserts that: (1) the ERC lacks standing to pursue both the

FHA and ADA claims because it cannot show an injury or causation; (2) the ERC lacks standing to

assert claims related to the properties not in the greater Washington, D.C. metropolitan area;[2] (3) the

ERC lacks standing to assert claims related to the 67 untested properties; (4) the ERC lacks standing

to pursue the ADA claims because it cannot meet the prudential standing requirements; (5) the two-

year statute of limitations for FHA claims prevents the ERC from asserting FHA claims related to

77 properties built more than two years before this case was filed; (6) the FHA claims related to four

properties constructed prior to the FHA effectiveness date should be dismissed; (7) the FHA and

ADA claims related to four properties not completed at the time this case was filed should be

dismissed as not ripe; (8) the FHA claims related to 20 properties not designed or constructed by

AvalonBay should be dismissed; and (9) the claim for injunctive relief should be dismissed because

it would be unduly burdensome and would not redress the ERC's injuries.

To a large extent, the arguments presented by AvalonBay have already been addressed in

rulings on similar motions in nearly identical cases brought in this District by the ERC against

defendants similar to AvalonBay.  *See The Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d

482 (D. Md. 2007) (denying motion to dismiss); *The Equal Rights Ctr. v. Camden Prop. Trust*, PJM-

07-2357, Memorandum Opinion (Sept. 22, 2008) (denying motion to dismiss); *The Equal Rights Ctr.*

---

[2] 87 of the properties at issue are located outside of the greater Washington, D.C. metropolitan area.

*v. Lion Gables Residential Trust,* DKC-07-2358, Memorandum Opinion (Aug. 13, 2008) (denying

motion to dismiss); *Equal Rights Ctr. v. Archstone Smith Trust*, AMD-04-3975, Transcript (Nov.

17, 2005) (denying motion to dismiss).  Nonetheless, this Court will address each of AvalonBay's

arguments below.

     A.    <u>Standing</u>

When an organization has no members and is suing on its own behalf, it must have

organizational standing to bring the cause of action.  *See Havens Realty Corp. v. Coleman*, 455 U.S.

363, 378-79 (1982).  To establish organizational standing, an entity must satisfy the constitutional

standing test in the same manner as would an individual bringing a claim.  *See id.*  The ERC must

show that: (1) it "suffered an injury in fact—an invasion of a legally protected interest which is (a)

concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) there

is "a casual connection between the injury and the conduct complained of"; and (3) it is "likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted).

     1.    <u>Injury and Causation</u>

Citing *Fair Employment Council of Greater Wash. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276

(D.C. Cir. 1994) and *Buchanan v. Consol. Stores, Corp.*, 125 F. Supp. 2d 730, 737 (D. Md. 2001),

AvalonBay argues that the "the mere expense of testing" in itself does not constitute "'injury in fact'

fairly traceable to [the defendant's] conduct."[3]  AvalonBay asserts that the ERC has only alleged that

it expended resources to investigate the properties at issue.  According to AvalonBay, the ERC

---

[3] In making this argument, AvalonBay seeks dismissal under Rule 12(b)(1).  As AvalonBay challenges the legal sufficiency of the ERC's complaint, the Court will review the arguments under the standard for a Rule 12(b)(6) motion.  *See Adams*, 697 F.2d at 1219.

7

cannot identify any person that it had to counsel, refer, or educate as a result of the alleged FHA and

ADA violations.  Thus, AvalonBay argues that the ERC has not alleged an injury in fact.

AvalonBay asserts that other Courts of Appeals have reached split decisions regarding

whether an allegation of diverting resources, which could have been used for other purposes, to

investigate alleged discrimination is sufficient injury to support Article III standing.[4]  In making this

argument, AvalonBay recognizes that the Fourth Circuit has not addressed the standing issues

presented by this case.  Nonetheless, AvalonBay suggests that this Court follow the decisions of the

Courts of Appeals that have found no standing in similar situations.  In support of its position,

AvalonBay asserts that finding standing in this case would essentially allow an organization to

manufacture constitutional standing merely by deciding to file suit.

In addition, AvalonBay asserts that, under *Havens*, a mere allegation of frustration of mission

---

[4] AvalonBay states that the Third, Fifth, Ninth, and D.C. Circuits support its position.  *See Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001) ("Because we agree that a plaintiff cannot establish standing simply by filing its own lawsuit, we will not consider the time and money the FHF has expended in prosecuting this suit in deciding if the FHF has standing to pursue the retaliation claim"); *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 80 (3d Cir. 1998) ("[T]he pursuit of litigation alone cannot constitute an injury sufficient to establish standing under Article III."); *BMC Mktg. Corp.*, 28 F.3d at 1276 (D.C. Cir. 1994) ("The diversion of resources to testing might well harm the Council's other programs, for money spent on testing is money that is not spent on other things. But this particular harm is self-inflicted; it results not from any actions taken by BMC, but rather from the Council's own budgetary choices."); *Assoc. for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization").  AvalonBay asserts that the Second, Sixth, Seventh, and Eleventh Circuits support the ERC's argument.  *See Central Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 642 (11th Cir. 2000) ("When a fair housing organization expends resources as a proximate result of the defendant's discriminatory conduct, and those resources would have been devoted to other activities consonant with its mission were it not for the offending conduct, it suffers injury independent of that suffered by individuals in the affected housing market."); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) (finding organizational standing where the plaintiff "was forced to 'devote significant resources to identify and counteract' the defendants' advertising practices and did so to the detriment of their 'efforts to [obtain] equal access to housing through counseling and other referral services.'"); *Hooker v. Weathers*, 990 F.2d 913, 915 (6th Cir. 1993) ("FHCS devoted resources to investigating the defendants' practices and alleges that it has confirmed that defendants do discriminate on the basis of familial status. Therefore, FHCS has standing."); *Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990) ("*Havens* makes clear, however, that the only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination.").

is insufficient injury.  AvalonBay argues that the alleged conduct must have "perceptibly impaired"

the organization's activities, and not simply constituted "a setback to the organization's abstract

social interests."  *See Havens*, 455 U.S. at 379.  In other words, AvalonBay states that *Havens*

requires a party to plead diversion of resources in addition to frustration of mission.

The ERC argues that, under *Havens* and the decisions of this District, it adequately plead

injury by alleging that: (1) it diverted resources from its counseling services to investigate the

alleged discrimination at AvalonBay's properties; and (2) Defendant's activities frustrated the

ERC's mission to ensure fair housing.  *See Havens*, 455 U.S. at 378-79; *Camden Prop. Trust*, PJM-

07-2357, Memorandum Opinion at pp. 7-13 (Sept. 22, 2008); *Equity Residential*, 483 F. Supp. 2d

at 487; *Archstone Smith Trust*, AMD-04-3975, Transcript at p. 51 (Nov. 17, 2005); *Williams v.*

*Poretsky Mgmt., Inc.*, 955 F. Supp. 490, 493-94 (D. Md. 1996); *see also Moseke v. Miller & Smith,*

*Inc.*, 202 F. Supp. 2d 492, 498-500 (E.D. Va. 2002).  *But see Buchanan*, 125 F. Supp. 2d at 736-38.

The ERC states that its case is distinguishable from *Buchanan* and *BMC Mktg.* because the

ERC has alleged specific harm to its programs that is independent of testing by pleading that it

"divert[ed] significant resources that the ERC would have used to provide counseling, education,

and referral services."  (Compl. ¶ 8.)  AvalonBay argues that the diversion of resources is not an

independent harm and that a similar allegation was present in *BMC Mktg*.

Having considered the arguments and case law, the Court believes that the relevant decisions

in this District are persuasive.  In three cases nearly identical to the current case, judges in this

District have found standing where the ERC made similar allegations regarding the diversion of

resources to investigate alleged discrimination at housing complexes owned by companies similar

to AvalonBay.  *See Camden Prop. Trust*, PJM-07-2357, Memorandum Opinion at pp. 7-13 (Sept.

22, 2008); *Equity Residential*, 483 F. Supp. 2d at 487; *Archstone Smith Trust*, AMD-04-3975, Transcript at p. 51 (Nov. 17, 2005).  The Court sees no reason to divert from these decisions.[5]

Moreover, the Court finds that the logic of *Havens* supports standing in this case.  In *Havens*, the organizational plaintiff's complaint included an allegation that:

> Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services.  Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices.

*Havens*, 455 U.S. at 379 (internal citations omitted).  Considering this allegation, the Court held that "there can be no question that the organization has suffered injury in fact."  *Id.*

In the present case, the ERC has alleged that, because of Defendants wrongful conduct, the ERC "has been damaged by the frustration of its mission, and by having to divert significant resources that the ERC would have used to provide counseling, education and referral services." (Compl. ¶ 8.) The ERC's allegations are comparable to, and difficult to distinguish from, those made in *Havens*.  Assuming the ERC's allegations to be true and drawing all inferences in its favor, the Court finds that the ERC has sufficiently plead injury in fact under *Havens*.

Having determined that the ERC adequately plead injury in fact, the Court must address causation.  AvalonBay argues that, even if there is an injury, "any diversion of the ERC's resources is attributable solely to the organization's unilateral decision to investigate and litigate, as opposed to anything that AvalonBay did or caused to be done to the organization or its activities."  In other words, AvalonBay suggests that the ERC cannot meet the causation requirement of the Article III standing test.

---

[5] Given the decisions in three recent and nearly identical cases to the present cases, the Court does not find the decision in *Buchanan*, which dealt with a factually different situation that did not include FHA or ADA claims, to be controlling in this case.  *See Buchanan*, 15 F. Supp. 2d at 736-38.

The Court is unpersuaded by AvalonBay's arguments that its alleged discriminatory activities did not cause the ERC's injuries.  For purposes of this motion, the Court must consider the ERC's allegations true and, thus, must assume that AvalonBay's properties are not compliant with the FHA and ADA.  Given that assumption, the existence of non-compliant properties is what caused the ERC to begin its investigation.  Confirmation of non-compliance upon investigating some buildings caused the ERC to investigate more properties and further suffer injury.  Those injuries are fairly traceable to AvalonBay.  Nothing more is required.

Finally, if the Court ultimately rules in favor of the ERC and grants damages or injunctive relief, that decision would clearly remedy the ERC's injuries.  Therefore, the Court holds that the ERC has Article III standing to pursue its claims under the FHA and ADA.

2.      87 Properties Outside D.C. Area

AvalonBay next argues that, even if the ERC has standing to bring some claims, the ERC cannot maintain claims related to the 87 properties located outside of the Washington, D.C. metropolitan area.  AvalonBay claims that the ERC only provides counseling, education, and referral services in the Washington, D.C. area.  Thus, AvalonBay asserts that properties located outside of the Washington, D.C. area could not have injured the ERC's counseling, education, and referral services.  The ERC disputes AvalonBay's assertions and argues that nothing in the complaint suggests that its mission is focused solely within the Washington, D.C. metropolitan area.  Rather, the ERC asserts that its mission is nationwide in scope.

Other cases in this District have previously found that the ERC is an "organization with a mission that is national in scope and breadth."  *See Equity Residential*, 483 F. Supp. 2d at 487; *Camden Prop. Trust*, PJM-07-2357, Memorandum Opinion at p. 13 (Sept. 22, 2008).  Nothing in

the complaint suggests otherwise.  The fact that certain properties were located outside the Washington, D.C. areas has no bearing upon this Court's standing analysis.

        3.    <u>Untested Properties</u>

AvalonBay further argues that, even if the ERC has standing to bring claims related to the tested properties, the ERC does not have standing to bring claims related to the untested properties. AvalonBay essentially claims that the untested properties did not injure the ERC because no resources were diverted to test them.  The ERC argues that the status of the properties as tested or untested is relevant.  Accordingly, the ERC claims it was injured by both the tested and untested properties.  The ERC maintains that the status of a property as untested or tested is only relevant to the scope of the remedy available.

Assuming the truth of the allegations in the complaint, the ERC expended staff time and diverted resources to review and analyze floor plans for the untested properties.  The ERC did this because of the violations it had already found at the tested properties.  Under *Havens*, the ERC has plead an injury in fact related to the untested properties.  Therefore, the Court is not persuaded by AvalonBay's argument on this point.

        4.    <u>Prudential Standing Limitations and the ADA</u>

AvalonBay next argues that the ERC does not have standing to pursue the ADA claims because it cannot comply with the prudential standing limitations.  AvalonBay states that prudential standing limitations apply to a cause of action unless there is an expression of congressional intent to remove them.  *Bennett v. Spears*, 520 U.S. 154, 162 (1997).  According to AvalonBay, Congress has not expressed an intent to remove prudential standing limitations from claims under Title III of the ADA.  Thus, AvalonBay argues that the ERC's claims under Title III of the ADA fail because

the prudential standing limitations prevent third party standing.  In further support of this argument, AvalonBay relies on that language of Title III, which provides a cause of action to "any person who is being subjected to discrimination . . . or who has reasonable grounds for believing that such person is about to be subjected to discrimination."  42 U.S.C. § 12188(a) (2006).

The ERC argues that prudential standing limitations do not apply to claims under Title III of the ADA.  In support of this argument, the ERC relies on the fact that several Courts of Appeals have found that prudential standing limitations do not apply to claims under Titles I and II of the ADA.  The ERC argues that the ADA has broad remedial purposes and, thus, it would be "incongruous and inequitable" to apply prudential standing limitations to claims under Title III but not under Titles I and II.

The Court agrees with the ERC.  The legislative history and purpose of the ADA are inconsistent with the application of prudential standing limitations to claims under Title III. Congress intended that, under Title III, "persons with disabilities have remedies and procedures parallel to those available under comparable civil rights laws."  H.R. Rep. No. 101-485, pt. 3, at 66 (1990), as reprinted in 1990 U.S.C.C.A.N. 445, 489.  Under the FHA, a civil rights law, prudential standing limitations do not apply.  *See Havens*, 455 U.S. at 372.  Moreover, several Courts of Appeals have found that prudential standing limitations do not apply to claims under Titles I and II of the ADA.  *See MX Group, Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47-48 (2d Cir. 1997), *superseded on other grounds*, *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001).  In addition, opinions in several district courts have found that prudential standing limitations do not apply to claims under Title III of the ADA.  *See Camden Prop. Trust*, PJM-07-2357, Memorandum Opinion,

at p. 15 (Sept. 22, 2008); *Equity Residential*, 483 F. Supp. 2d at 487 n.7; *see also Goldstein v. Costco Wholesale Corp.*, 278 F. Supp. 2d 766, 769-72 (E.D. Va. 2003) (finding no standing but using a *Havens* analysis).   The Court is further persuaded by the policy considerations stated by Judge Davis:

> [I]t would be an absurdity of extraordinary proportions if, in this nationwide pattern and practice lawsuit seeking to vindicate the equal access rights of persons with disabilities, ERC were permitted to seek injunctive and declaratory relief which, if it were successful, would make it possible for persons with disabilities to live in otherwise nonconforming apartment units, while as the same time, as a result of a lack of plaintiff's standing under the ADA, persons with disabilities obtained *no access* or *limited access* to parking lots or leasing offices (public accommodations) at those very multi-family buildings.

*Equity Residential*, 483 F. Supp. 2d at 487 n.7 (emphasis in original).

### 5.   AvalonBay's Request for Jurisdictional Discovery

In addition to arguing that the complaint fails to state facts showing standing, AvalonBay argues that the ERC cannot prove it suffered any injury to its ordinary program activity.   In other words, AvalonBay asserts that the facts alleged to support jurisdiction are not true.   This is the second type of 12(b)(1) challenge.   *See Adams*, 697 F.2d at 1219.   In this context, the Court regards the allegations in the complaint merely as evidence and may consider additional evidence or hold an evidentiary hearing.

The fact that the ERC expended resources to investigate the properties at issue is sufficient injury to support standing.   The resources spent on investigation clearly could have been spent on other programs had the investigation not been undertaken.   The Court does not need to hold an evidentiary hearing or consider additional evidence, and thus it declines AvalonBay's request to conduct jurisdictional discovery.

B.    Statute of Limitations

AvalonBay next argues that the ERC's claims related to 77 properties should be dismissed on statute of limitations grounds.  The ERC filed its complaint on September 22, 2005.  According to AvalonBay, pursuant to § 3613(a)(1)(A) of the FHA, properties built prior to September 22, 2003, would be time-barred.  AvalonBay states that 77 properties were built before that date and, thus, the ERC cannot seek to recover for the alleged FHA violations associated with those properties.  In support of this argument, AvalonBay states that the only discrimination claim available to the ERC is a failure to design and construct claim, not a practice and pattern claim.  Thus, AvalonBay believes that the statute of limitations begins to run on such claims upon the completion of the construction of each property and that, because each property is separately actionable, they cannot be aggregated under the continuing violation theory.  In making this argument, AvalonBay relies on *Ledbetter v. Goodyear Tire & Rubber Co.,* 127 S. Ct. 2162 (2007)[6] and *Nat'l R.R. Passenger Corp. v. Morgan* 536 U.S. 101 (2002).

The ERC argues that the continuing violation doctrine applies to this case.  In support of its position, the ERC relies on the language of 42 U.S.C. § 3613(a)(1)(A) (stating that a party must bring claims "not later than 2 years after the occurrence or termination of an alleged discriminatory housing practice").  The ERC emphasizes the word "termination" and asserts that this shows that the FHA statute of limitations contemplates the continuing violation doctrine.  In addition, the ERC states that it is clear under *Havens* that the continuing violations doctrine applies to FHA claims.  *Havens*, 455 U.S. at 380.  In the present case, the ERC believes that the continuing violations

---

[6] On January 29, 2009, the Lilly Ledbetter Fair Pay Act (Pub.L. No. 111-2, amending 42 USC § 2000e-5[e] ), was signed into law.  The Lilly Ledbetter Fair Pay Act partially overruled the *Ledbetter* decision.  The Act provides that, where the continuing effect of a prior decision is the issuance of a discriminatory paycheck within the statute of limitations, the later paycheck can form the basis of a discrimination claim.

doctrine is applicable because AvalonBay committed "a continuing violation by engaging in a systematic and ongoing discriminatory conduct."

In response to the ERC's arguments, AvalonBay argues that *Havens* allowed a continuing violations theory because it dealt with a racial steering claim.  According to AvalonBay, a racial steering case requires proof of a pattern and practice that cannot be said to occur on one day.  Thus, AvalonBay argues that *Havens* is consistent with *Ledbetter* and *Morgan* because a racial steering claim is similar to a hostile work environment claim under Title VII.  AvalonBay states that the ERC's claim in this case is different from *Havens* because the ERC is basing its continuing violation on a series of building constructions, each of which was a discrete act.  As it believes each building construction was a discrete act, AvalonBay argues that there can be no continuing violation under *Morgan* and *Ledbetter*.  AvalonBay states that the ERC cannot get around *Morgan* and *Ledbetter* by merely alleging a pattern and practice of discrete acts.

The Court agrees with the ERC and finds that the continuing violations doctrine applies in this case.[7]  The ERC has alleged that AvalonBay engaged in a pattern and practice of constructing at least 100 buildings in violation of the FHA.  Assuming the truth of this allegation, the ERC has shown a continuing violation.  AvalonBay's discriminatory behavior did not "terminate" until the construction of the last non-compliant building.  Thus, the statute of limitations does not prevent the ERC from bringing claims based on the buildings constructed more than two years before the filing

---

[7] The ERC also asserts that the failure to remedy non-compliant properties constitutes a continuing violation.  Citing *Moseke*, 202 F. Supp. 2d at 502-09 (E.D. Va. 2002), AvalonBay argues that the ERC cannot invoke the continuing violation doctrine based on the continuing effects of a noncompliant property.  AvalonBay states that continuing effects cannot form the basis of a continuing violations argument because it would essentially render the statute of limitations meaningless.  The Court need not address this argument as it believes the continuing violation doctrine is supported by the ERC's pattern and practice argument.

of this action.[8]

Numerous district courts have addressed this issue and allowed the plaintiff's in similar situations to proceed under a continuing violations theory. *See Camden Prop. Trust*, PJM-07-2357, Memorandum Opinion, at pp. 16-21 (Sept. 22, 2008); *Lion Gables Residential Trust*, DKC-07-2358, Memorandum Opinion, at pp. 6-13 (Aug. 13, 2008); *Nat'l Fair Hous. Alliance v. A.G. Spanos Constr., Inc.*, 542 F. Supp. 2d 1054, 1060-62 (N.D. Ca. 2008); *Silver State Fair Hous. Council, Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218, 1220-22 (D. Nev. 2005); *see also Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F. Supp. 2d 700, 709-10 (D. Md. 1999).

Moreover, the FHA cases cited by AvalonBay to support its position deal with factually different situations where the defendant only constructed one property and the asserted continuing violation is the continued effects of that single property. *See Garcia v. Brockway*, 503 F.3d 1092, 1094-99 (9th Cir. 2007)[9]; *Kuchmas v. Towson University*, 06-3281, 2007 WL 2694186, at *1-5 (D. Md. Sept. 10, 2007); *Moseke*, 202 F. Supp. 2d at 498-500.

Finally, the *Ledbetter*, *Morgan*, and the other cases cited by AvalonBay deal with claims under Title VII. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007); *Williams v. Giant Inc.*, 370 F.3d 423 (4th Cir. 2004). As Judge Chasanow found in *Lion Gables*, there are important differences between Title VII and the FHA that render *Morgan* inapplicable to the present case:

> *Morgan* was an employment case brought pursuant to Title VII. The statute of limitations for Title VII provides a limitations period that begins to run "after the

---

[8] Even if the Court ruled in favor of the Defendant on the continuing violation legal issue, the Court would still deny AvalonBay's motion to dismiss. There are no facts in the complaint regarding when the properties were constructed, and the Court believes that it would be inappropriate to grant summary judgment given the ERC's lack of an opportunity to conduct discovery.

[9] The Court recognizes that *Garcia* relied on *Ledbetter*. *Garcia*, 503 F.3d at 1094-99. Nonetheless, the Court is persuaded by the cases that have not applied *Ledbetter* and *Morgan* to FHA claims similar to the ERC's.

alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).  Thus, Title VII does not contain the "termination" language that Congress added to the FHA.  As the legislative history of the inclusion of that term in the FHA explains, Congress "intended to reaffirm the concept of continuing violations, under which the statute of limitations is measured from the date of the last asserted occurrence of the unlawful practice." . . . The conclusion that *Morgan* does not control this case is supported by several additional indicia.  As noted, the Court in *Morgan* did not rely on *Havens* at any point.  Nor did the Court refer to *Havens* in *Ledbetter* . . . .  Moreover, the holding in *Morgan* is based on specific statutory text of Title III. . . . The Court has emphasized the unique qualities of the two statutes underscoring that while the FHA was to be read to manifest the "broad remedial intent [that] Congress embodied in the Act" . . . Title VII, by contrast, resulted from a series of "legislative compromises."

*Lion Gables*, DKC-07-2358, Memorandum Opinion, at pp. 11-13 (Aug. 13, 2008) (internal citations omitted).

The Court is persuaded by the cases that have applied the continuing violations theory in similar FHA claims.  Moreover, the Court believes that the policy considerations underlying the statute of limitations are less pressing in FHA design and construct cases.  As articulated by the United States in its amicus brief:

The features of an inaccessible building do not fade with time.  For example, a ground-floor apartment that is made inaccessible because of steps leading to its entrance remains inaccessible until those steps are removed.  Inaccessible features can be observed and measured, and proof of liability does not rely upon the memory of witnesses or the availability of documents.

United States Amicus Brief (Docket No. 53, Ex. 1) at p. 5.

C.    Arguments Regarding Specific Properties

AvalonBay argues that: (1) the FHA claims related to four properties constructed prior to the FHA effectiveness date should be dismissed; (2) the FHA and ADA claims related to four properties not completed at the time this case was filed should be dismissed as not ripe; and (3) the FHA claims related to 20 properties not designed or constructed by AvalonBay should be dismissed because

18

these are failure to design and construct claims, which require some role in the design or construction.

In making these arguments, AvalonBay relies on evidence outside the complaint, an affidavit from one of its corporate officers.  Where a motion for dismissal pursuant to Rule 12(b)(6) relies on matters outside the pleadings, the Court treats it as a motion for summary judgment.  Fed. R. Civ. P. 12(d).

The ERC has not had the opportunity to conduct discovery, and thus it is not in the position to come forward with evidence to rebut the factual assertions of AvalonBay.  Thus, at this stage in the litigation, the Court is not prepared to grant summary judgment to AvalonBay.  *See McLaughlin v. Murphy*, 372 F. Supp. 2d 465, 470 (D. Md. 2004) (stating that "[g]enerally, summary judgment must not be ordered when the nonmoving party has not had the opportunity to discover information essential to his opposition.").  AvalonBay's motion for summary judgment is denied without prejudice and can be refiled following the close of discovery.

AvalonBay argues that discovery is unnecessary to resolve these issues because the Court can dismiss these claims under a normal Rule 12(b)(6) analysis, as it claims that the certificates of occupancy for the properties at issue are public records, thus enabling the Court to take judicial notice.  The Court does not have ready access to these certificates of occupancy and is not about to expend resources to track them down, especially considering the fact that AvalonBay could have easily provided them to the Court.  As the Court declines to take judicial notice of the certificates of occupancy, AvalonBay's arguments seeking dismissal of claims regarding certain properties fail. There are no allegations in the complaint supporting AvalonBay's position.

D.    Claim for Injunctive Relief

AvalonBay's final argument is that the Court should dismiss the ERC's demand for injunctive relief.  AvalonBay asserts that "[t]he retrofitting order that ERC seeks for each of the 100 properties at issue here also would impose an onerous financial and logistical burden on AvalonBay that is wholly out of proportion to the ERC's claimed injuries."  According to AvalonBay, injunctive relief would not remedy the ERC's injury (diversion of resources and frustration of mission).  AvalonBay states that money damages would be adequate.

Citing *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 3 F. Supp. 2d 661 (D. Md. 1998), the ERC argues that there is no "burdensome" exception for claims under the FHA.  The ERC further states that, even if the Court were to consider the burden, there is no evidence in the record regarding the extent of any burden.

At this stage in the litigation, the Court does not believe it is appropriate to dismiss the claim for injunctive relief.  There is no evidence regarding the burden AvalonBay would face if the Court were ultimately to issue a retrofitting order.  Moreover, the Court is not prepared to find that money damages alone would adequately remedy the ERC's injuries.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will deny AvalonBay's Motion to Dismiss or, in the alternative, for Summary Judgment.  A separate Order will follow.


   March 23, 2009                              /s/
       Date                          Alexander Williams, Jr.
                                     United States District Judge


20